UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

SEIU TEXAS
    Plaintiff

v.

G2 SECURE STAFF, LLC
    Defendant

Case No. 4:25-cv-4866

## COMPLAINT

Plaintiff SEIU Texas files this complaint against Defendant G2 Secure Staff, LLC, alleging that the Defendant has violated the Railway Labor Act and the Labor Management Relations Act by its refusal to abide by the parties' Collective Bargaining Agreement's arbitration mechanism in connection with G2's termination of employees protected by the "just cause" provision in the parties' Agreement. SEIU Texas seeks relief from this Court in the form of an order that G2 arbitrate the parties' pending disputes.

### STATEMENT OF JURISDICTION

1. This action arises under the Railway Labor Act, 45 U.S.C. § 151, *et seq.*, and under Section 301 of the Labor Management Relations Act, as amended (LMRA), 29 U.S.C. §185, *et seq.* This Court has jurisdiction pursuant to 28 U.S.C. §1331 and 1337. This Court has jurisdiction to enforce the parties' obligations under both Acts and to issue an order compelling the Defendant to arbitrate the grievances in dispute between the parties before their contractual System Board of Adjustment.

### VENUE

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 as it was within this District that the acts complained of occurred.

## PARTIES

3. Plaintiff SEIU Texas ("the Union"), is an unincorporated not-for-profit association organized and operated for the purpose of collectively representing persons employed by the Defendant within this District and other employers in Texas. The Union is the collective bargaining representative of employees in the service of Defendant. Additionally, the Union is a labor organization within the meaning of 29 U.S.C. §185(b) and represents employees in an industry affecting commerce within the meaning of 29 U.S.C. § 185(b)

4. Defendant G2 Secure Staff, LLC ("G2"), is a "carrier" as that term is applied in Title II, Sections 201 and 202 of the RLA, 45 U.S.C. §§ 181, 182. Defendant does business in this judicial district. The Defendant is also an "employer" within the meaning of 29 U.S.C.§ 152(2) and is engaged in commerce and in an industry affecting commerce within the meaning of 29 U.S.C. §152(6) and (7).

## STATUTORY BACKGROUND

5. Labor relations in the railroad and airline industries are governed by the Railway Labor Act. The RLA sets forth procedures for the resolution of disputes arising out of or involving the formation, interpretation, and/or application of a collective bargaining agreement between a carrier and representative of its employees. The RLA distinguishes between two tracks of resolution, depending upon whether the dispute is a "major" dispute or a "minor" dispute. *Consol. Rail Corp. v. Ry. Labor Execs. Ass'n*, 491 U.S. 299, 302-04 (1989).

6. A dispute is "major" where the dispute relates to the formation or amendment of agreement terms affecting rates of pay, rules, or working conditions. The process for resolution of major disputes is governed by Section 2, Seventh and Section 6 of the Act. 45 U.S.C. § 152, Seventh; § 156.

7.      A dispute is "minor" where it relates to the interpretation or application of a provision of an existing collective bargaining agreement. Section 204 of the RLA, 45 U.S.C. § 184, included by amendment to the Act in 1936, provides for the resolution of minor disputes in the airline industry and mandates the establishment of adjustment boards covering air carriers and their employees:

> The disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions . . . shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to an appropriate adjustment board . . .
>
> It shall be the duty of every carrier and of its employees, acting through their representatives, selected in accordance with the provisions of this title, to establish a board of adjustment . . .

8.      Section 2, First of the RLA, 45 U.S.C. §, First, governs the duty of carriers and employees to settle disputes, providing in part that "[i]t shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions . . ."

9.      In the alternative, as a result of recent decisions by the National Mediation Board, a federal agency that interprets the applicability of the RLA, and by the National Labor Relations Board, a federal agency that interprets the applicability of the National Labor Relations Act ("NLRA"), G2 may be subject to the NLRA and to suits to compel arbitration under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, *et seq*. See *Swissport Cargo Services, LP*, 52 NMB 25 (2024) (holding that airline contractors and their employees are subject to the NLRA) and *Swissport Cargo Services*, LP, 373 NLRB No. 144, 2024 WL 5057786 (Dec. 10, 2024) (same).

3

# FACTS

10. G2 and SEIU Texas are parties to a collective bargaining agreement (the "CBA" or the "Agreement") with effective dates February 29, 2024, to February 28, 2027,[1] and which becomes amendable on February 28, 2027. Relevant portions of the Agreement are attached as **Exhibit 1.**

11. The Agreement provides in "Article 1: Recognition" that:

> This agreement ("Agreement") shall apply to all of the Employer's employees (a) who are employed on the premises of George Bush Intercontinental Airport ("IAH") or the Houston William P. Hobby International Airport ("HOU") (collectively referred to as the "Airports"), and (b) who perform cabin cleaning, security, passenger assistance (i.e., service ambassador, wheelchair, and ticket verification and line queue employees), baggage handling other than the loading and unloading of cargo, freight and baggage on or off aircraft (i.e., skycaps, bag runners, other employees handling baggage pre-security, and interline baggage handling post-security), smartcart, lavatory and water service, or terminal or other cleaning services (the "Covered Services"), and (c) for whom the Employer has voluntarily recognized the Union as their collective bargaining representative pursuant to the January __, [sic] 2021, Recognition Agreement between the Employer and the Union. . . .

12. The Agreement also contains, in "Article 4: Discharge and Discipline," a "just cause" provision for discipline or discharge: "Absent just cause, the Employer may not discharge or discipline an Employee who has completed his trial period. . . ."

13. Moreover, the Agreement contains, in "Article 5: Grievance/Arbitration," a grievance procedure which provides for full and binding arbitration of disputes via a "System Board of Adjustment":

> 5.1 General. During the term of this Agreement, all disputes and grievances shall be settled as quickly as possible by the Grievance Procedure provided herein.
>
> 5.2 Definition. For the purpose of this Agreement, a "grievance" is defined as any dispute between the Employer and the Union regarding only the

---

[1] While an introductory paragraph states the agreement was "made as of" April 17, 2024, and while G2 executed the agreement on June 2, 2024, the agreement's "term" article (and its cover page) states it is valid during the term stated above. The parties had an earlier and substantially identical Collective Bargaining Agreement effective April 6, 2022, to February 28, 2024.

meaning or application of or performance of the other party under this Agreement, presented to the other party by the aggrieved party in writing within fourteen (14) calendar days after it occurred, or when the employee or aggrieved party became, or should have become, aware of it.

5.3 Consultation and Complaint. An Employee and/or Union Representative may consult directly with an Employer-Supervisor for the purpose of resolving any grievances, or on a matter that does not necessarily constitute a grievance.

In any case, where the Union or the Employer is not satisfied with respect to the disposition of a matter regarding the meaning or application of any provision of this Agreement, the Union or the Employer may submit the complaint as a grievance within the time set forth in paragraph 5.2 above. The grievance will state a summary of the facts, the specific portion of the Agreement allegedly violated, and the date the alleged violation occurred. If requested by the Employer, the Union will provide additional details and/or clarification regarding the subject of the grievance. If requested by the Union, the Employer shall provide additional details and/or clarification regarding the subject of its grievance.

5.4 Procedure. The Employer and the Union shall hold a meeting on unresolved grievances no later than thirty (30) calendar days after the filing of the written grievance. If the parties are unable to resolve the grievance at such meeting, either party may submit the grievance to arbitration before the System Board of Adjustment pursuant to Article 5.6., below. The grievance must be submitted to the System Board, in writing, with a copy to the other party, within thirty (30) calendar days after denial of the grievance, or the grievance will be deemed denied.

5.5 All claims under this Agreement may only be brought by the Union or Employer alone and no individual Employee shall have the right to compromise or settle any claim without the written permission of the Union.

5.6 Any disputes that arise between the parties concerning the meaning and application of this Agreement that remain unresolved following the procedures set forth above may be resolved through final and binding arbitration before the parties' System Board of Adjustment, created in accordance with Section 204 of the RLA.

    5.6.1 The System Board of Adjustment shall consist of three (3) members, one (1) of whom shall be selected and appointed by the Employer, one (1) of whom shall be selected and appointed by the Union, and one (1) of whom shall be a neutral arbitrator selected by mutual agreement between the parties from among the following: Richard Bloch, Dana Eischen, Bonnie Weinstock,

5

        Carol Wittenberg, or Josh Javits. The parties may mutually agree on another arbitrator to serve as the neutral member of the System Board on a case-by-case basis. The parties also may agree to dispense with the party-appointed System Board members in a particular case, and have the neutral member hear the case as the sole arbitrator.

  5.6.2    The System Board shall have exclusive jurisdiction over disputes growing out of grievances or out of the interpretation or application of any of the terms of this Agreement. The jurisdiction of the System Board shall not extend to proposed changes in hours of employment, rates of compensation, or working conditions covered by this Agreement.

  5.6.3    The System Board shall consider any dispute properly submitted to it by the Union or the Employer when such dispute has not been previously settled in accordance with the terms of this Agreement.

14.    The parties' Agreement, in Section 1.1, states that the parties recognize that their agreement is governed by the RLA. Furthermore, the parties' contractual "Board of Arbitration" is a "System Board of Adjustment" ("SBA") as the term is used in Section 204 of the RLA and is established pursuant to that Section of the Act. The Board possesses exclusive jurisdiction over all disputes arising out of grievances or out of the interpretation or application of the collective bargaining agreement concerning rates of pay, rules and working conditions.

15.    During the term of the parties' Agreement, G2 has discharged at least ten employees whom SEIU Texas represents and who are covered by the parties' Agreement.

16.    Pursuant to the parties' Agreement, SEIU Texas filed timely grievances challenging these employees' terminations as unsupported by just cause. Despite G2's persistent delays, the parties conducted the contractually required meetings to discuss these grievances.

17.    In some instances, G2 denied the grievances during the parties' grievance meeting. In other instances, G2 and SEIU Texas engaged in discussions following the

grievance meeting, in an effort to resolve the grievances. G2 eventually denied some of those grievances. As to other grievances, G2 never officially denied the grievances.

18. SEIU Texas has invoked the Agreement's System Board of Adjustment arbitration mechanism as to all these termination disputes.

19. G2 has failed and refused to agree to the scheduling of arbitration hearings over any of these disputes.

20. Communications between the parties regarding the grievances and regarding SEIU Texas' attempts to submit the matters to the System Board of Adjustment arbitration mechanism are attached as **Exhibits 2 and 3.**

21. The dispute over G2's termination of employees represented by SEIU Texas raises a dispute over the interpretation or application of their collective bargaining agreement, including Article 4.

22. SEIU Texas invoked the grievance procedure of the G2-SEIU Texas collective bargaining agreement in a timely manner by the filing of the grievances detailed above.

23. SEIU Texas has contacted Neutral Arbitrator Dana Eischen in an attempt to schedule these matters for an arbitration hearing. G2 has failed and refused to participate in the correspondence and has failed and refused to agree to arbitration hearings. See **Exhibit 4.**

24. No arbitration hearings have been held, SEIU Texas has been unable to prevail upon G2 to submit the grievances to arbitration, and the grievances remain unresolved.

### CAUSES OF ACTION

#### COUNT ONE – VIOLATION OF RLA SECTION 2, FIRST
#### 45 U.S.C. § 152, FIRST

25. SEIU Texas incorporates by reference paragraphs 1 to 24 as if restated herein.

26. Section 2, First of the RLA, 45 U.S.C. § 152, First, governs the duty of carriers and employees to settle disputes. It provides in part that "[i]t shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions . . ."

27. The Supreme Court has described Section 2, First as "[t]he heart of the Railway Labor Act." *Bhd. of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 377 (1969).

28. By refusing to arbitrate grievances arising under the G2-SEIU Texas collective bargaining agreement G2 has failed to exert every reasonable effort to maintain the agreement, in violation of Section 2, First of the RLA.

## COUNT TWO – VIOLATION OF RLA SECTION 184
## 45 U.S.C. § 184

29. SEIU Texas incorporates by reference paragraphs 1 to 28 as if restated herein.

30. Section 204 of the RLA, 45 U.S.C. § 184, governs the resolution of minor disputes as applied to the airline industry and provides for the compulsory arbitration of such disputes through boards of adjustment. It provides in part:

> The disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions . . . shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to an appropriate adjustment board . . .
>
> It shall be the duty of every carrier and of its employees, acting through their representatives, selected in accordance with the provisions of this subchapter, to establish a board of adjustment . . .
>
> Such boards of adjustment may be established by agreement between employees and carriers either on any individual carrier, or system, or group of carriers by air and any class of classes of its or their employees . . .

31. By refusing to arbitrate grievances arising under the G2-SEIU Texas collective bargaining agreement and by refusing to establish a System Board of Adjustment for such purpose G2 violated and is violating Section 184 of the RLA.

### COUNT THREE – VIOLATION OF LMRA SECTION 301
### 29 U.S.C. § 185

32. SEIU Texas incorporates by reference paragraphs 1 to 31 as if restated herein.

33. In the alternative, Section 301 of the LMRA, 29 U.S.C. § 185, governs claims of violations of contracts between employers and labor organizations representing the employer's employees. It states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

34. By refusing to arbitrate grievances arising under the G2-SEIU Texas collective bargaining agreement G2 violated and is violating Section 185 of the LMRA.

### PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully requests that this Court:

a. Assume jurisdiction of this case;

b. Enter an order declaring that G2's conduct in refusing to arbitrate grievances within the scope of the grievance and arbitration procedures of the G2-SEIU Texas collective bargaining agreement violates 45 U.S.C. §§ 152, First, § 184 and 29 U.S.C. § 185;

c. Enter an order compelling United to comply with the grievance adjustment procedures of the G2-SEIU Texas collective bargaining agreement, and to convene on an expedited basis the System Board, sitting with a neutral chair, to hear and decide finally the grievances arising from its discharge of

employees SEIU Texas represents, and to comply fully with its obligations under the Railway Labor Act and Labor Management Relations Act, in connection with the resolution of the parties' dispute over the discharge of said employees.

d. Enter an order directing G2 to cease from further refusal to arbitrate disputes arising under the terms of the G2-SEIU Texas collective bargaining agreement.

e. Such other and further relief including damages, attorneys' fees, and costs that the Court may deem just and proper.

THE PLAINTIFF,

BY: _____

Manuel Quinto-Pozos
Texas Bar No. 24170459
DEATS DURST & OWEN PLLC
8140 N. Mopac Expy.
Suite 4-250
Austin, Texas 78759
512-474-6200
512-474-7896 (fax)
mqp@ddollaw.com

## CERTIFICATE OF SERVICE

I, the undersigned attorney for the Plaintiff, hereby certify that this document has been electronically served on the following on this 10th day of October, 2025.

Chris Elliott
G2 Secure Staff, LLC
CElliott@g2securestaff.com

Steven Shatsky
SShatsky@G2SecureStaff.com

Susan Madrigal
SMadrigal@G2SecureStaff.com

/s/ Manuel Quinto-Pozos
Manuel Quinto-Pozos
