# EXHIBIT 1

Ex 1. G2 Secure Staff LLC Contract Excerpts.pdf

# AGREEMENT

Between

## G2 SECURE STAFF LLC

and

## SERVICE EMPLOYEES INTERNATIONAL UNION TEXAS



Febuary 29, 2024

to

Febuary 28, 2027



31

# Table Of Contents

| | Page |
|---|---|
| Article 1: Recognition | 1 |
| Article 2: Contract Enforcement | 3 |
| Article 3: Union Security and Check-Off | 4 |
| Article 4: Discharge and Discipline | 5 |
| Article 5: Grievance/Arbitration | 6 |
| Article 6: Contractor Transition | 8 |
| Article 7: Seniorit, Vacancies, and Bidding for Shifts/Schedules | 9 |
| Article 8: Workload/Reductions | 12 |
| Article 9: No Strike, No Lockout, Expedited Arbitration | 12 |
| Article 10: Leaves of Absence | 13 |
| Article 11: Vacations | 14 |
| Article 12: Health Insurance | 14 |
| Article 13: Holidays | 14 |
| Article 14: The Workweeks, Overtime, and Method of Pay | 14 |
| Article 15: Successors, Assigns, and Subcontracting | 15 |
| Article 16: Non-Discrimination | 16 |
| Article 17: Government Mandates | 17 |
| Article 18: Wages and Costs | 17 |
| Article 19: Management's Rights | 18 |
| Article 20: Health and Safety | 19 |
| Article 21: Uniforms and Personal Appearance | 20 |
| Article 22: Materials and Equipment | 20 |
| Article 23: Break Rooms | 21 |
| Article 24: Training | 21 |

Ex 1. G2 Secure Staff LLC Contract Excerpts.pdf

# Table Of Contents

| | Page |
|---|---|
| Article 25: Labor-Management Committee | 21 |
| Article 26: Most Favored Nations | 22 |
| Article 27: Drug and Alcohol Policy | 22 |
| Article 28: Parking | 23 |
| Article 29: Term | 23 |
| Attachment A | 24 |

Ex 1. G2 Secure Staff LLC Contract Excerpts.pdf

**SEIU TEXAS AND G2 SECURE STAFF, LLC AGREEMENT**
**FEBRUARY 29, 2024 to FEBRUARY 28, 2027**

AGREEMENT MADE as of this 17th day of April, 2024, by G2 Secure Staff, LLC (the "Employer") and SEIU Texas (the "Union"), acting on behalf of its members and for whom it is the collective bargaining agent.

## Article 1: Recognition

1.1 This agreement ("Agreement") shall apply to all of the Employer's employees (a) who are employed on the premises of George Bush Intercontinental Airport ("IAH") or the Houston William P. Hobby International Airport ("HOU") (collectively referred to as the "Airports"), and (b) who perform cabin cleaning, security, passenger assistance (i.e., service ambassador, wheelchair, and ticket verification and line queue employees), baggage handling other than the loading and unloading of cargo, freight and baggage on or off aircraft (i.e., skycaps, bag runners, other employees handling baggage pre-security, and interline baggage handling post-security), smartcart, lavatory and water service, or terminal or other cleaning services (the "Covered Services"), and (c) for whom the Employer has voluntarily recognized the Union as their collective bargaining representative pursuant to the January __, 2021, Recognition Agreement between the Employer and the Union. The parties agree that this agreement is governed by the Railway Labor Act ("RLA"), and that neither of them shall contest the applicability of the RLA in the future. If it is determined at some point that the Company is not subject to the RLA, the following provisions shall apply with respect to the parties' negotiations for any successor CBA:

    1.1.1 Either or both parties may provide written notice to the other party of its intent to amend and modify the terms of the parties' CBA. Such notice shall be considered the equivalent of the notice required by RLA Section 6 and the parties shall treat it as such. The parties shall be obligated to maintain the status quo following such notice to the same extent as they would be following the service of the notice required by RLA Section 6.

    1.1.2 After service of such notice, the parties will meet and confer in good faith conferences in direct negotiations to reach an agreement for a successor CBA.

    1.1.3 Either party may terminate such conferences with written notice to the other party. In such event, either party may within ten (10) days provide written notice of its intention to seek mediation. If such request is made, the parties shall appoint a mutually-selected mediator, or if one cannot be mutually agreed upon, such appointment shall be made under the auspices of the Federal Mediation and Conciliation Services ("FMCS").

self-service portal, unless the Union directs in writing that dues be remitted by means other than electronic transmittals. The transmission shall be accompanied with the following information for whom the dues are transmitted: the amount of dues payment for each Employee, the Employee's wage rate, the Employee's date of hire, the Employee's site or site change, whether the Employee is part-time or full-time, the employee's identification number with the Employer, the last four digits of the Employee's social security number, the Employee's address, and the Employee's classification. Such information shall also be provided electronically.

3.6   The Union agrees to indemnify and save such Employer harmless from any liability incurred by reason of deductions made pursuant to this Article 3.

## Article 4: Discharge and Discipline

4.1   Employees hired on or after the effective date of this Agreement shall undergo a 90-day trial period, except those hired as a result of a contractor transition as regulated in Article 6. Employees shall not accrue seniority during the trial period. Upon successful conclusion of the trial period, the Employee's seniority date shall be the first date worked.

4.2   Absent just cause, the Employer may not discharge or discipline an Employee who has completed his trial period. All Employees shall receive written notice of all disciplinary actions at the time when the discipline is issued. Such notice shall state the alleged violation, the date of the disciplinary action, and the disciplinary action being imposed.

4.3   An Employee who is the subject of an investigation that could potentially lead to disciplinary action against the Employee may request that the Union, through union staff or stewards, be present during any investigative meeting involving the Employee.

4.4   Disciplinary actions, excluding unexcused absences and tardiness, shall not be relied upon for purposes of progressive discipline if the Employee does not receive any discipline for a period of 12 consecutive months following the last issuance of discipline; except that for suspensions or final warnings, the period shall be 24 consecutive months from the date of the suspension or final warning.

4.5   If the customer demands the removal of an Employee from its account, the Employer may remove the Employee from further employment at the account. The Employer will advise the Union of the information it has relating to the customer's complaint and make reasonable efforts to secure from the customer a written confirmation of the customer's request. A management official other

than the Employee's direct supervisor shall confirm that the customer made the request without instigation by the Employer. The Union may challenge the bona fides of the Employer's claim that the customer has demanded removal and has done so without Employer instigation, provided, however, that in any arbitration on the Union's challenge, in order to establish the bona fides of its contention that the customer requested removal of the Employee, the Employer need not call customer employees or representatives as witnesses and can rely upon hearsay evidence. With respect to an Employee removed pursuant to a customer request, unless the Employer has cause to discharge the employee, the Employer will place the employee in a job at another account for which the employee is qualified, covered by this Agreement with as little dislocation for the employee as is feasible at comparable pay or benefits. If the job offered by the Employer is not at comparable pay and benefits, the Employee may choose to place their name on a waiting list for a period for three (3) months, without pay, for a job at another account with comparable pay and benefits.

4.6   The Employer shall have the right to maintain discipline and efficiency of its operations, including the right to discharge, suspend or discipline any Employee for cause. Just cause for discharge shall include, but not be limited to, the following:

   A.   Theft.

   B.   Possession of unlawful, prohibited or dangerous weapons.

   C.   Physical altercation on the job.

4.7   Any temporary Employee or Employee who has not completed his/her trial period may be discharged or disciplined by the Employer in its discretion and without having to satisfy the just cause standard. No question concerning the discipline or discharge of any such Employee shall be the subject of arbitration.

4.8   No Employee shall leave her or his assigned post or take any break without the prior approval of the Employee's supervisor or the Employer's manager and without proper relief in attendance. The Employer shall provide reasonable relief to Employees.

4.9   Employees shall conduct themselves professionally at all times while on airport property.

## Article 5: Grievance/Arbitration

5.1   General. During the term of this Agreement, all disputes and grievances shall be settled as quickly as possible by the Grievance Procedure provided herein.

5.2 Definition. For the purpose of this Agreement, a "grievance" is defined as any dispute between the Employer and the Union regarding only the meaning or application of or performance of the other party under this Agreement, presented to the other party by the aggrieved party in writing within fourteen (14) calendar days after it occurred, or when the employee or aggrieved party became, or should have become, aware of it.

5.3 Consultation and Complaint. An Employee and/or Union Representative may consult directly with an Employer-Supervisor for the purpose of resolving any grievances, or on a matter that does not necessarily constitute a grievance.

In any case, where the Union or the Employer is not satisfied with respect to the disposition of a matter regarding the meaning or application of any provision of this Agreement, the Union or the Employer may submit the complaint as a grievance within the time set forth in paragraph 5.2 above. The grievance will state a summary of the facts, the specific portion of the Agreement allegedly violated, and the date the alleged violation occurred. If requested by the Employer, the Union will provide additional details and/or clarification regarding the subject of the grievance. If requested by the Union, the Employer shall provide additional details and/or clarification regarding the subject of its grievance.

5.4 Procedure. The Employer and the Union shall hold a meeting on unresolved grievances no later than thirty (30) calendar days after the filing of the written grievance. If the parties are unable to resolve the grievance at such meeting, either party may submit the grievance to arbitration before the System Board of Adjustment pursuant to Article 5.6., below. The grievance must be submitted to the System Board, in writing, with a copy to the other party, within thirty (30) calendar days after denial of the grievance, or the grievance will be deemed denied.

5.5 All claims under this Agreement may only be brought by the Union or Employer alone and no individual Employee shall have the right to compromise or settle any claim without the written permission of the Union.

5.6 Any disputes that arise between the parties concerning the meaning and application of this Agreement that remain unresolved following the procedures set forth above may be resolved through final and binding arbitration before the parties' System Board of Adjustment, created in accordance with Section 204 of the RLA.

    5.6.1 The System Board of Adjustment shall consist of three (3) members, one (1) of whom shall be selected and appointed by the Employer, one (1) of whom shall be selected and appointed by the Union, and one (1) of whom shall be a neutral arbitrator selected by mutual agreement

between the parties from among the following: Richard Bloch, Dana Eischen, Bonnie Weinstock, Carol Wittenberg, or Josh Javits. The parties may mutually agree on another arbitrator to serve as the neutral member of the System Board on a case-by-case basis. The parties also may agree to dispense with the party-appointed System Board members in a particular case, and have the neutral member hear the case as the sole arbitrator.

5.6.2  The System Board shall have exclusive jurisdiction over disputes growing out of grievances or out of the interpretation or application of any of the terms of this Agreement. The jurisdiction of the System Board shall not extend to proposed changes in hours of employment, rates of compensation, or working conditions covered by this Agreement.

5.6.3  The System Board shall consider any dispute properly submitted to it by the Union or the Employer when such dispute has not been previously settled in accordance with the terms of this Agreement.

5.6.4  The expenses and compensation of the neutral System Board member, and any other shared expenses (e.g., hearing room, court reporter) shall be borne equally by the Union and Employer. Each party will be responsible for the expenses and compensation of its System Board member and the witnesses called by it.

5.6.5  This Article 5.6 prevails to the extent any other provision of this Article 5 is inconsistent herewith.

**Article 6: Contractor Transition**

6.1  When Employer acquires or otherwise assumes the servicing of an account at the Airports to provide Covered Services where the Union is the collective bargaining representative of the employees providing such services, the Employer agrees to offer employment to the employees who have been working at the account immediately before takeover, including those who might be on vacation or off work because of illness, injury or authorized leaves, provided that their employment is consistent with applicable law and the Employer's reasonable hiring and employment standards. For purposes of this Article the Employer shall hire based on the predecessor employer's staffing levels in effect ninety (90) days prior to the contractor transition date, except where there were increases in the staffing levels during that period resulting from customer requirements. Staffing level information shall be provided by the Union upon request. The Employer may reduce the staffing level on takeover of the account if the Employer can demonstrate a commensurate, appreciable decrease in the work done or a different, more efficient method to

Ex 1: G2 Secure Staff LLC Contract Excerpts.pdf

SEIU TEXAS AND G2 SECURE STAFF, LLC AGREEMENT
FEBRUARY 29, 2024 to FEBRUARY 28, 2027

27.6 Violations of this Policy may result in disciplinary action. Alternatively, an employee shall be offered an opportunity for rehabilitation for a first offense. However, should an employee "refuse to submit" to the required test, as a "refusal to submit" is defined by the Federal Department of Transportation regulations, the employee's employment should be terminated.

### Article 28: Parking

The parties agree to approach the airport authority jointly seeking resolution on a no-cost parking option for employees and Employers at the airport, both over the short-term and post-construction. The parties agree to meet within thirty (30) days after the Union ratifies this Agreement to plan such approach.

### Article 29: Term

This Agreement shall become effective on February 29, 2024, and shall continue in full force and effect until February 28, 2027, and shall renew itself without change until each succeeding year thereafter unless written notice of an intended change is served in accordance with Section 6, Title I of the Railway Labor Act, as amended, by either party hereto no less than sixty (60) days, and no more than one-hundred and twenty (120) days, prior to said amendable date.

**AGREED FOR:**

**SEIU TEXAS**                                    **G2 SECURE STAFF, LLC**

_Signature_    _Date_                             _Signature_  6/2/2024  _Date_

Ex 1. G2 Secure Staff LLC Contract Excerpts.pdf

23